**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| **BILLY RALPH EPPS, ID # 36428-177,** | ) | |
| **Movant,** | ) | **No. 3:09-CV-264-D-BH** |
| **vs.** | ) | **No. 3:07-CR-213-D (01)** |
| | ) | |
| **UNITED STATES OF AMERICA,** | ) | **Referred to U.S. Magistrate Judge** |
| **Respondent.** | ) | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Pursuant to the provisions of 28 U.S.C. § 636(b) and an Order of the Court, this action has

been referred to the United States Magistrate Judge for findings, conclusions, and recommendation.

**I.  BACKGROUND**

Movant, an inmate currently incarcerated in the federal prison system, filed this Motion to

Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 to challenge his federal con-

viction and sentence in Cause No. 3:07-CR-213-D.  The respondent is the United States of America

(government).

On June 29, 2007, movant was charged by indictment with six counts of possession of red

phosphorous, a List I chemical, for the purposes of facilitating methamphetamine production.  (*See*

Indictment, doc. 1.)[1]  On August 17, 2007, the government filed a notice of citation error to address

the fact that Count One mistakenly cited to 21 U.S.C. § 841(c)(1) rather than (c)(2) even though the

elements of (c)(2) were listed in the indictment.  (Notice of Citation Error at 1-2, doc. 17.)  On Aug-

ust 16, 2007, movant signed a factual resume in which he admitted facts sufficient to support a plea

to Count One.  (*See generally* Factual Resume, doc. 20.)  A plea agreement was filed on August 17,

2007.  (Plea Agreement, doc. 19.)  At his rearraignment on September 7, 2007, movant pled guilty

---

[1]  Unless stated otherwise, all document numbers refer to the docket number assigned in the underlying criminal action.

to Count One in the indictment consistent with his plea agreement. (*See* Tr. Rearraignment at 5-6.) After placing movant under oath, the district court inquired about the voluntariness of the plea and the factual basis for it. (*Id.* at 1-14.) It also informed movant that he was waiving his right to appeal except to the limited extent set out in the plea agreement. (*Id.* at 14.)

On October 26, 2007, a Probation Officer submitted a Presentence Report (PSR) that calculated a sentencing range of 324 to 405 months imprisonment on Count One. The calculation was based in part on (1) attributing in excess of 43,000 kilograms of marijuana to movant after converting red phosphorous and other chemicals and drugs to their marijuana equivalent pursuant to the Drug Equivalency Table, USSG § 2D1.1,[2] and (2) two-level enhancements in offense level under § 2D1.1(b)(1) for possession of a firearm; § 2D1.1(b)(4) for known illegally imported chemicals; and § 2D1.1(b)(8)(A) for unlawfully discharging a hazardous or toxic substance into the environment. The PSR also included a three-level downward adjustment for acceptance of responsibility, placing movant's total offense level at forty-one. The Probation Officer also determined that movant fell within Criminal History Category I. Given the statutory maximum of 240 months for possession and distribution of a List I chemical to be used for the manufacture of methamphetamine, the calculated sentencing range was reduced to an advisory guideline of 240 months.

On November 7, 2007, movant submitted objections to the PSR and a motion for downward departure. On November 19, 2007, the Probation Officer submitted an addendum to the PSR that addressed movant's objections but did not alter the calculated range. On November 28, 2007, movant submitted objections to the addendum.

---

[2] Conversion was necessary under the Sentencing Guidelines because some chemicals are not referenced in the drug quantity table and because multiple chemicals and drugs were aggregated. *See* U.S. Sentencing Guidelines Manual § 2D1.1 cmt. nn.5, 6 & 10 (2007).

On January 8, 2008, the Court conducted a sentencing hearing. (Tr. Sentencing at 1.) The Court sustained movant's objection to the two-level enhancement for possession of a handgun. (*Id.* at 25-26.) Consequently, movant became eligible for a two-level safety-valve reduction. (*Id.* at 26.) The district court also granted the government's motion for a two-level downward departure based on movant's substantial assistance. (*Id.* at 31.) This reduced movant's total offense level to thirty-five, which resulted in an advisory guideline range of 168 to 210 months. (*Id.* at 32.) On January 18, 2008, the district court entered judgment on movant's guilty plea and sentenced him to 168 months of imprisonment. (*See* Judgment, doc. 31.) On this same day, movant signed a statement directing his attorney not to file an appeal of the conviction. (*See* App. to Resp. Opp'n Mot. § 2255 at 6 [hereinafter App. Resp.].)

On February 10, 2009, the Court received a *pro se* motion to vacate and a memorandum in support. (*See* Mot. Vacate at 1; Mem. Supp. at 1.) Movant claims his counsel was ineffective for coercing him into pleading guilty and waiving his right to appeal and failing to challenge the quantity of relevant conduct attributed to him, the deficiency of the indictment, and the court's failure to follow *Booker*. (*See* Mot. Vacate at 5-9B; Mem. Supp. at 6-42.) The government filed a response. (Resp. Opp'n Mot. § 2255 [hereinafter Resp.].) Movant also filed a reply brief that addressed the issues raised in his original motion and memorandum. (Def.'s Resp. to Government Resp. Opp'n to Defendant's § 2255 Mot. [hereinafter Reply].)

## II.  INEFFECTIVE ASSISTANCE OF COUNSEL

Movant claims that he received ineffective assistance of trial and appellate counsel. (*See* Mot. Vacate at 5-9B; Mem. Supp. at 6-42.)

The Sixth Amendment to the United States Constitution provides in pertinent part that "[i]n

all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. art. VI. To successfully state a claim of ineffective assistance of trial or appellate counsel, movant must generally demonstrate (1) that counsel's performance was deficient and (2) that the deficient performance prejudiced his defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000). A failure to establish either of these prongs generally requires a finding that counsel's performance was constitutionally effective. *Strickland*, 466 U.S. at 696. The Court may address the prongs in any order. *Smith v. Robbins*, 528 U.S. 259, 286 n.14 (2000).

In determining whether counsel's performance is deficient, courts "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable assistance." *Strickland*, 466 U.S. at 689. Further, "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions." *Id.* at 691.

To establish prejudice, a movant must show that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694 ; *see Williams v. Taylor*, 529 U.S. 362, 393 n.17 (2000) (inquiry focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair). Reviewing courts must consider the totality of the evidence before the finder of fact in assessing whether the result would likely have been different absent the alleged errors of counsel. *Strickland*, 466 U.S. at 695-96. One cannot satisfy the second prong of *Strickland* with mere speculation and conjecture. *Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992). Conclusory allegations are also insufficient to obtain relief under § 2255. *United States v. Woods*, 870 F.2d 285, 288

4

n.3 (5th Cir. 1989); *United States v. Daniels*, 12 F. Supp. 2d 568, 575-76 (N.D. Tex. 1998); *see also*

*Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) (holding that "conclusory allegations of inef-

fective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

## A.  Sufficiency of Indictment

Movant claims that his attorney did not object that the indictment failed to charge an offense

under 21 U.S.C. § 841(c)(2) because it failed to list a specific quantity of red phosphorous.  (Mot.

Vacate at 8; Mem. Supp. at 8-24.)  He claims his attorney should have raised moved to dismiss the

indictment prior to his guilty, at sentencing, and on direct appeal.  (Mot. Vacate at 8; Mem. Supp.

at 25.)

When an indictment fails to charge an offense, counsel can object to the indictment as insuf-

ficient.  *See United States v. Cotton*, 535 U.S. 625, 631-32 (2002).  An insufficient indictment can

result in an erroneous enhancement of a defendant's sentence.  *See id.* at 632-33.  An indictment is

sufficient if it contains the elements of the offense charged and fairly informs a defendant of the

charge against him which he must defend and enables him to plead an acquittal or conviction in bar

of future prosecutions for the same offense.  *Hamling v. United States*, 418 U.S. 87, 117 (1974).

Section 841(c)(2) states that an offense is committed when a "person knowingly or inten-

tionally . . . possesses or distributes a listed chemical knowing, or having reasonable cause to

believe, that the listed chemical will be used to manufacture a controlled substance except as

authorized by this subchapter . . . ."  21 U.S.C. § 841(c)(2) (2009).  Count One of the indictment

states:

> From on or about April 2005 through November 2006, in the Dallas Division of the
> Northern District of Texas, defendant, **BILLY RALPH EPPS**, knowingly and inten-
> tionally possessed and distributed red phosphorous, a List I chemical, knowing and
> having reasonable cause to believe that the listed chemical would be used to manu-

facture a mixture or substance containing a detectable amount of methamphetamine,
a Schedule II controlled substance.

(Indictment at 1.)  Here, the indictment parallels the essential elements of § 841(c)(2).  The statute

does not require that a specific quantity of the listed chemical be designated in the indictment as

movant claims.

In support of his claim, movant relies on *United States v. Longoria*, 259 F.3d 363 (5th Cir.

2001), which vacated a sentence for lack of jurisdiction because the indictment did not specify an

amount of marijuana.  (*See* Mem. Supp. at 8, 15-16.)  That case appears distinguishable because it

dealt with the default statutory provision for marijuana, 21 U.S.C. § 841(b)(1)(D), not for a List I

Chemical under § 841(c)(2).  Moreover, the Fifth Circuit heard the case *en banc* after the Supreme

Court decided *Cotton*, and affirmed the sentence.  *See United States v. Longoria*, 298 F.3d 367, 369

(5th Cir. 2002).  Neither *Cotton* nor the *en banc Longoria* decision provides a basis for finding the

indictment in this case defective.

Because the indictment sufficiently charged an offense, movant's attorney was not inef-

fective for failing to raise this challenge to the indictment prior to or at sentencing.  An attorney need

not challenge the indictment on frivolous grounds to render effective assistance.

The failure to raise the this issue on appeal also falls within the wide range of conduct that

qualifies as reasonable assistance.  Attorneys do not need to raise frivolous issues on appeal to

render effective assistance.  *See United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000); *United

States v. Williamson*, 183 F.3d 458, 462-63 (5th Cir. 1999).  Furthermore, by movant's voluntary

plea, he waived his right to appeal except for a sentence exceeding the statutory maximum

punishment or an arithmetic error at sentencing.  (Plea Agreement at 4-5, ¶ 11; Tr. Rearraignment

at 14.)  The challenge to the indictment does not fall within the limited right to appeal retained by

6

movant after his voluntary plea.  Because the challenge lacked sufficient merit to raise on appeal and does not fit within the limited issues that movant retained the right to appeal after his voluntary plea, counsel did not render deficient representation by failing to present the issue on appeal.

Movant's claim that counsel was ineffective for failing to challenge the indictment as defective is without merit.

## B.  Coercion

Movant claims that his attorney coerced him into pleading guilty and into waiving his right to appeal.  (*See* Mot. Vacate at 5; Reply at 4-5, 7-9.)

A plea of guilty waives a number of constitutional rights.  *United States v. Ruiz*, 536 U.S. 622, 628 (2002); *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969).  Consequently, "the Constitution insists, among other things, that the defendant enter a guilty plea that is 'voluntary' and that the defendant must make related waivers 'knowing[ly], intelligent[ly], [and] with sufficient awareness of the relevant circumstances and likely consequences."  *Ruiz*, 536 U.S. at 629 (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)); *accord Bousley v. United States*, 523 U.S. 614, 618 (1998) (a plea "is constitutionally valid only to the extent it is 'voluntary' and 'intelligent'") (quoting *Brady*, 397 U.S. at 748).

Nevertheless, a plea induced by threats, improper promises, deception, or misrepresentation is not voluntary.  *See United States v. Amaya*, 111 F.3d 386, 389 (5th Cir. 1997).  A plea qualifies as intelligent when the criminal defendant enters it after receiving "real notice of the true nature of the charge against him, the first and most universally recognized requirement of due process."  *Bousley*, 523 U.S. at 618 (quoting *Smith v. O'Grady*, 312 U.S. 329, 334 (1941)).  In determining whether a plea is intelligent, "the critical issue is whether the defendant understood the nature and

substance of the charges against him, and not necessarily whether he understood their technical legal effect." *Taylor v. Whitley*, 933 F.2d 325, 329 (5th Cir. 1991).

"*Boykin* requires that defendants have a hearing prior to entry of the plea, at which there needs to be an affirmative showing that the decision to plead guilty was voluntarily and intelligently made." *Matthew v. Johnson*, 201 F.3d 353, 368 n.22 (5th Cir. 2000). Rule 11 of the Federal Rules of Criminal Procedure provides procedural safeguards for assuring that guilty pleas are entered voluntarily and knowingly. It requires "a judge to address a defendant about to enter a plea of guilty, to ensure that he understands the law of his crime in relation to the facts of his case, as well as his rights as a criminal defendant."[3] *United States v. Vonn*, 535 U.S. 55, 62 (2002). "The very premise of the required Rule 11 colloquy is that, even if counsel is present, the defendant may not adequately understand the rights set forth in the Rule unless the judge explains them." *Id.* at 78 (Stevens, J., concurring). A determination of whether a defendant understands the consequences of his guilty plea does not require a trial court to determine that the defendant has a perfect understanding of the consequences, however. The Court must only ascertain whether the defendant has a realistic or reasonable understanding of his plea. *See United States v. Gracia*, 983 F.2d 625, 627-28 (5th Cir. 1993) (recognizing that one of the core concerns behind Rule 11 is "a realistic understanding of the consequences of a guilty plea"). Compliance with the admonishments required under Fed. R. Crim. P. 11 provides "prophylactic protection for the constitutional rights involved in the entry of a guilty plea." *Id.* at 627.

"The voluntariness of a plea is determined by 'considering all of the relevant circumstances

---

[3] Rule 11 has undergone various changes over the years. *See* Fed. R. Civ. P. 11 (showing various amendments); *United States v. Ruiz*, 536 U.S. 622, 631 (2002) (referring to Rule 11 as the "guilty-plea safeguards"); *United States v. Vonn*, 535 U.S. 55, 62 (2002) (recognizing the evolution of the rule over the past three decades).

surrounding it.'" *Fischer v. Wainwright*, 584 F.2d 691, 693 (5th Cir. 1978) (quoting *Brady*, 397 U.S. at 749).  Courts considering challenges to guilty plea proceedings "have focused on three core concerns:  absence of coercion, the defendant's understanding of the charges, and a realistic understanding of the consequences of a guilty plea." *Gracia*, 983 F.2d at 627-28.  A realistic understanding of the consequences of a guilty plea means that the defendant knows the "the immediate and automatic consequences of that plea such as the maximum sentence length or fine." *Duke v. Cockrell*, 292 F.3d 414, 417 (5th Cir. 2002).  "If a defendant understands the charges against him, understands the consequences of a guilty plea, and voluntarily chooses to plead guilty, without being coerced to do so, the guilty plea . . . will be upheld on federal review." *Frank v. Blackburn*, 646 F.2d 873, 882 (5th Cir. 1980) (en banc), *modified on other grounds*, 646 F.2d 902 (5th Cir. 1981).

In addition, prisoners who challenge their guilty pleas on collateral review must overcome a "strong presumption of verity" accorded "solemn declarations" made in open court.  *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).  Prisoners must also overcome the presumption of regularity and "great weight" accorded court records.  *See United States v. Abreo*, 30 F.3d 29, 32 (5th Cir. 1994) (holding that a signed, unambiguous plea agreement "is accorded great evidentiary weight" when determining whether a plea is entered voluntarily and knowingly); *Bonvillian v. Blackburn*, 780 F.2d 1248, 1252 (5th Cir. 1986) (holding that court records are "accorded great weight"); *Webster v. Estelle*, 505 F.2d 926, 929-30 (5th Cir. 1974) (holding that court records "are entitled to a presumption of regularity").

"Ordinarily a defendant will not be heard to refute his testimony given under oath when pleading guilty." *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985) (quoting *United States v. Sanderson*, 595 F.2d 1021, 1021 (5th Cir. 1979) (per curiam)).  Such refutations may be

heard on collateral review, however, when the movant "offers specific factual allegations supported by the affidavit of a reliable third person . . . ." *Id.* In other words, when a § 2255 movant makes allegations which conflict with his sworn testimony at his plea hearing, he must provide an "independent indicia of the likely merit of [his] allegations, typically in the form of one or more affidavits from reliable third parties." *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998). A movant's own affidavit does not suffice. *United States v. Mackay*, Nos. 3:04-CV-0413-D, 3:97-CR-0208-T(01), 2007 WL 700895, at *26 (N.D. Tex. Mar. 6, 2007) (accepting recommendation of Mag. J.).

### 1.       Guilty Plea

Movant claims that his attorney coerced him into pleading guilty by misleading him about the length of the sentence he could expect. (*See* Mot. Vacate at 5; Reply at 4-5, 7-9.)

Movant's testimony at rearraignment contradicts this claim. The district court placed movant under oath and informed him of perjury consequences for falsely answering the district court's questions. (*See* Tr. Rearraignment at 2.) Movant stated that he understood (1) the charge to which he was pleading guilty; (2) the maximum term of imprisonment (twenty years for Count One) and maximum fine of $250,000; (3) that the Court could impose a sentence above or below the appropriate guideline range; and (4) that the sentencing guidelines were effectively advisory rather than mandatory in light of *United States v. Booker*, 543 U.S. 220 (2005). (*Id.* at 5-12.) Movant testified that he had read the plea agreement with the help of his attorney and understood the plea agreement. (*Id.* at 6.) He confirmed that no one had attempted to force him to plead guilty or made any promise to induce him to plead guilty. (*Id.* at 7-8.) He also said that he understood his attorney was only giving a professional opinion, and not a promise, about what his sentence would ultimately be. (*Id.*

at 12.)  He testified that he understood that he was still bound by his plea of guilty even if the judge

imposed a more severe sentence than he expected.  (*Id.* at 13, 15.)  This testimony creates a strong

presumption that movant understood that he might receive a sentence longer than he expected or

than anyone had suggested he would receive.  *See Blackledge*, 431 U.S. at 73-74.

Movant's assertions are insufficient to overcome the presumption of verity accorded to his

previous testimony because he offers no affidavits from reliable third persons or any other inde-

pendent indicia of coercion to support his assertions.  *See Fuller*, 769 F.2d at 1099; *Cervantes*, 132

F.3d at 1110.  He relies solely on his verified filings in this case to show that his guilty plea was

coerced.  He contends that his attorney "told me something about a Level 24, which I did not

understand at the time" and that his attorney said after receiving the PSR that "they really stuck it

to me." (Reply at 4.)  He alleges that he relied on his lawyer's advice and did whatever his attorney

said because he did not know any better.  (*Id.*)  According to movant, he would have proceeded to

trial had he "had any idea that [he] would get a 14 year sentence." (*Id.*)  He further alleges that his

attorney told him he only faced sixty months maximum in prison.  (*Id.* at 8.)[4]  Despite movant's

allegations and contentions, there is no competent evidence in the record that suggests movant's plea

was coerced.  Because he has not overcome the presumption of verity accorded to his testimony

under oath, the Court finds that he was not coerced to plead guilty and that his plea was voluntarily

given.  *See Frank*, 646 F.2d at 882.

2.    **Appeal**

Movant also claims his attorney coerced him into waiving his right to appeal as part of his

---

[4]  In an appendix to its response to movant's motion, the government includes an affidavit from movant's former
attorney.  (*See* App. Resp. at 3-7).  In his affidavit, the attorney states that  he "never coerced plaintiff into signing the
plea agreement or changing his plea to Count One." (*Id.* at 4).  He also notes that he "always informed Defendant that
the final Sentence is up to the Court." (*Id.*)  The Court has not relied on this affidavit.

guilty plea because he did not understand the consequences of waiving this right.  (Reply at 4-5.) He claims that his attorney pressured him into signing a document stating that he did not wish to file an appeal.  *Id.*

Rule 11 of the Federal Rules of Criminal Procedure includes a requirement that the judge ask the defendant if he is aware of "the terms of any plea agreement provision waiving his right to appeal or collaterally attack the sentence."  Fed. R. Crim. P. 11(b)(1)(N).  This is one aspect of the prophylactic nature of Fed. R. Crim. P. 11.  *See Gracia*, 983 F.2d at 627.  Determining whether a defendant understands the consequences of his guilty plea, including the waiver of his right to appeal, does not require a trial court to determine that the defendant has a perfect understanding of the consequences; the Court must only ascertain whether the defendant has a realistic or reasonable understanding of his plea.  *See id.* at 627-28.

At his guilty plea, movant testified that he understood he was waiving his right to challenge on direct appeal anything except a sentence exceeding the statutory maximum punishment or an arithmetic error at sentencing.  (Tr. Rearraignment at 14.)  He also said he understood what was contained in the plea agreement he signed.  (*See id.* at 6; Plea Agreement at 4-5, ¶ 11.)[5]  Movant cannot easily refute his testimony given under oath when pleading guilty.  *See Fuller*, 769 F.2d at 1099. He identifies nothing in the record that suggests that he did not understand he was waiving his right to appeal.  He also fails to support his factual allegations with affidavits from reliable third persons or other independent indicia of coercion.  *See id.*; *Cervantes*, 132 F.3d at 1110.  As a result, movant has not overcome the presumption of verity attributed to his testimony under oath.  *See Blackledge*,

---

[5] At times, movant contends that the Court failed to notify him of his appellate rights.  (*See* Reply at 9, 12, 14.)  Not only does the record contradict the contention (*see* Tr. Rearraignment at 14), but the contention is based upon circumstances not present here, *i.e.*, that he proceeded to trial on a plea of not guilty.

431 U.S. at 73-74.  He has failed to carry his burden to show that he did not understand the waiver

of his appellate rights or that his right to appeal was coerced and involuntary.  *See Frank*, 646 F.2d

at 882.

Movant also does not show that the attorney coerced him to waive the limited right to appeal

that he retained after pleading guilty other than to state that the attorney insisted he sign the

document stating that he did not wish to appeal.  He provides no independent indicia to support such

a claim.  Conclusory allegations are insufficient to obtain relief through § 2255.  *See Johnson*, 200

F.3d at 282.

Because movant has not shown that his plea or waiver of appeal was coerced, these claims

fail for a lack of deficiency by counsel and resulting prejudice to movant.  *See Strickland*, 466 U.S.

at 687.

## C.  <u>Quantity of Red Phosphorus</u>

Movant contends his attorney failed to challenge the quantity of red phosphorus attributed

to him.  (*See* Mot. Vacate at 5-9B.)  Specifically, movant claims that his attorney (1) failed to inde-

pendently investigate the evidence and ask the government to present its evidence, (2) ineffectively

challenged the quantity of red phosphorus attributed to him, (3) failed to object to the district court's

use of the sentencing guidelines as mandatory rather than advisory, (4) failed to object to the calcu-

lated sentencing range after application of sentencing enhancements, and (5) failed to raise several

of these issues on direct appeal.  (*See id.*; Reply at 4-5.)

### 1.      Failure to Investigate

Movant claims that his attorney was ineffective when he failed to (1) independently investi-

gate the amount of red phosphorous movant received and (2) examine the government's evidence

or ask the government to present the evidence used to support the number of orders for red phosphorous attributed to him.  (Mot. Vacate at 5.)

Counsel's failure to investigate evidence that could potentially result in a reduction of the defendant's sentence can serve as a ground for an ineffective assistance of counsel claim.  *See Lockett v. Anderson*, 230 F.3d 695, 711 (5th Cir. 2000).  However, allegations of counsel's failure to investigate must allege with specificity what the investigation would have revealed and how it would have altered the outcome for the defendant.  *Id.* at 713.  Brief and conclusory allegations that counsel's representation was deficient because of a failure to investigate and develop useful evidence are insufficient to show ineffective assistance of counsel.  *Anderson v. Collins*, 18 F.3d 1208, 1221 (5th Cir. 1994).  Furthermore, to show prejudice within the meaning of *Strickland* in the sentencing context, movant must demonstrate that the alleged deficiency of counsel created a reasonable probability that his sentence would have been less harsh.  *See Glover v. United States*, 531 U.S. 198, 200 (2001).  One cannot satisfy the prejudice prong of *Strickland* with mere speculation and conjecture.  *Bradford*, 953 F.2d at 1012.

In this case, movant does not specify what evidence his attorney could have independently investigated that would have been beneficial to him.[6]  Furthermore, movant provides no explanation of why an examination of the government's evidence or a request that the government present its evidence would have benefitted him.  These allegations are not further elaborated by movant or supported by any evidence in the record.  Consequently, movant's failure to investigate claim is conclusory and without merit.  Movant has failed to articulate any reason why an investigation into

---

[6]  The affidavit from movant's former attorney suggests that he did ask movant to bring his computer to the attorney's office to investigate potentially mitigating evidence but that movant chose not to comply.  (App. Resp. at 5, ¶ 9.)  The Court has not relied on this affidavit.

the evidence would have altered the outcome of his case. *See Lockett*, 230 F.3d at 713. He has shown no reasonable probability that his sentence would have been less harsh had his attorney conducted a more thorough investigation. Thus, movant has not shown that his attorney's conduct prejudiced him in any way.

### 2.     Effectiveness of Challenge

Movant claims his attorney ineffectively challenged the quantity of red phosphorus attributed to him. (Mot. Vacate at 5-9A.)

### a. *Drug Equivalency Table*

Movant initially claims that his attorney failed to object to the district court's improper use of the Drug Equivalency Table of the Federal Sentencing Guidelines. (Mot. Vacate at 9A.)

Under the Sentencing Guidelines, the Drug Equivalency Table crossover guidelines must be consulted during sentencing when there are multiple transactions or multiple drug types involved in a drug case and when the Drug Quantity Table does not list a specific drug or chemical. *See* U.S. Sentencing Guidelines Manual § 2D1.1 cmt. nn.5, 6 & 10 (2007). When applying the Drug Equivalency Table crossover guidelines, all of the drugs involved in a case are converted into a baseline standard of marijuana using a multiplier that varies for each individual drug. *See id.*

Movant's claim is unsupported by the record because his attorney did object to the amount of red phosphorous the district court attributed to movant after applying the Drug Equivalency Table crossover guidelines. For example, his attorney objected that not all of the red phosphorous in movant's possession would have been used to produce methamphetamine, thereby making the amount reached under the crossover guidelines excessive. (Objections to PSR at 1-2, ¶ 1.) His attorney also objected that another unindicted co-conspirator actually received some of the orders

15

of red phosphorous attributed to movant.  (*Id.*)  He further objected that movant was not part of any joint enterprise to impute guideline responsibility for the entire 15.3 kilograms of red phosphorous, particularly through crossover guideline sections.  (*Id.*)

The fact that an attorney was unsuccessful in his efforts to raise an objection does not mean that his efforts were deficient when one considers the entire record.  *Youngblood v. Maggio*, 696 F.2d 407, 410 (5th Cir. 1983).  Based on the fact that movant's attorney did object on multiple grounds to the district court's use of the Drug Equivalency Table crossover guidelines, his conduct was not deficient and as a result was not ineffective.  *See id.*; *Strickland*, 466 U.S. at 687.

### b. *Exaggerative Nature of PSR*

Movant claims that his attorney failed to object to the exaggerative and deceptive nature of the PSR.  (Mot. Vacate at 5.)  Movant does not specify what was exaggerative and deceptive about the report other than the fact that the report erroneously attributed 15.3 kilograms of red phosphorous to movant rather than 1500 grams.  (*See id.* at 6.)

Movant's attorney clearly did object on multiple grounds to the PSR, including that the amount of red phosphorous alleged in the report was exaggerative.  Movant's attorney objected that the amount stated in paragraph ten of the PSR was unreasonable.  (Objections to PSR at 1, ¶ 1.)  His attorney related that movant admitted ordering 15.3 kilograms of red phosphorous but that he never received that amount.  (*Id.* at 1-2, ¶ 1.)  His attorney also objected on the grounds that RAW Chemical International, the supplier of the red phosphorous, was unreliable in getting the orders to movant, so the orders significantly overstated the amount he actually received.  (*Id.* at 2, ¶ 1.)  The attorney also objected that movant used some of the red phosphorous for legitimate purposes as part of his work as a blacksmith.  (*Id.*)

16

Movant's claim appears unsupported by the facts.  Furthermore, the fact that the attorney was unsuccessful in his objections to the PSR does not mean that he rendered deficient representation when the entire record is considered.  *See Youngblood*, 696 F.2d at 410.  In light of the evidence in the record and the fact that some of his attorney's objections were successful, movant has not overcome the presumption that his attorney's conduct falls within the wide range of reasonable assistance.  He has also shown no reasonable probability that had counsel made other objections he would have received a less harsh sentence.  Consequently, this claim is without merit.

      **c.  *PSR***

Movant also claims that the nineteen objections his attorney did make to the PSR were ineffective.  (Reply at 4.)

This claim is not supported by the record.  First, the district court sustained some of his attorney's objections, which resulted in a reduction of movant's sentencing range.  (*See* Tr. Sentencing at 25-26, 41.)  Second, the district court ultimately sentenced movant at the bottom of that reduced sentencing range because of his attorney's arguments.  (*See id.* at 41.)

Based on the evidence in the record, movant's claim does not overcome the "strong presumption that [his attorney's] conduct [fell] within the wide range of reasonable assistance."  *See Strickland*, 466 U.S. at 689.  Simply because not all of the objections movant's attorney raised were successful does not mean his performance was deficient.  *See Youngblood*, 696 F.2d at 410.  Furthermore, movant phrases this argument in conclusory terms without stating any basis why these objections were ineffective.  *See Woods*, 870 F.2d at 288 n.3.  He has shown no reasonable probability that he would have received a less harsh sentence had his attorney asserted different objections or better argued the objections that were asserted.  This claim fails.

### d. *Enhancements*

Movant also argues that his attorney failed to object to application of sentencing enhancements based on the quantity of red phosphorus after the Court applied them. (Mot. Vacate at 9B.)

This claim is a variation of movant's other claims, with the difference being the timing of the alleged deficiency, *i.e.*, after application of the enhancements rather than before or during sentencing. Considering the objections that were asserted against the PSR and at sentencing, as discussed, this claim has no merit. Movant does not specify what objections his attorney could or should have raised at the conclusion of the sentencing hearing. He has shown no reasonable probability that his sentence would have been less harsh had his attorney asserted an objection at that time, so this claim entitles movant to no relief.

### 3.      Failure to Raise Issues on Direct Appeal

Movant claims he received ineffective assistance of counsel when his attorney failed to raise these issues on direct appeal. (Mot. Vacate at 6, 9A.) More specifically, he argues that his attorney should have appealed the district court's improper use of the Drug Equivalency Table conversion guidelines and the exaggerative quantity of evidence attributed to him in the PSR. (*See id.*; Mem. Supp. at 28, 37-38.)

An attorney also need not raise every non-frivolous issue on appeal to be effective. *United States v. Williamson*, 183 F.3d 458, 462 (5th Cir. 1999). "Instead, to be deficient, the decision not to raise an issue must fall 'below an objective standard of reasonableness.'" *United States v. Phillips*, 210 F.3d 345, 348 (5th Cir. 2000) (quoting *Strickland*, 466 U.S. at 688). "[A] reasonable attorney has an obligation to research relevant facts and law, or make an informed decision that certain avenues will not prove fruitful. Solid, meritorious arguments based on directly controlling

precedent should be discovered and brought to the court's attention." *Williamson*, 183 F.3d at 462-63 (footnote and citations omitted). To determine whether appellate counsel renders deficient performance by not raising claims on appeal, the Court must consider whether the omitted challenges "would have been sufficiently meritorious such that [the attorney] should have raised it on appeal." *Phillips*, 210 F.3d at 348. To show prejudice from a failure to raise an issue on appeal, movant must show a reasonable probability "that the outcome on appeal would have changed" but for the deficiency of counsel. *Blanton v. Quarterman*, 543 F.3d 230, 245 (5th Cir. 2008), *cert. denied*, 129 S. Ct. 2383 (2009).

As discussed, the issues that movant argues should have been appealed had insufficient merit to present to the court of appeals. Furthermore, by his voluntary plea, movant waived his right to appeal except for a sentence exceeding the statutory maximum punishment or an arithmetic error at sentencing. (Plea Agreement at 4-5, ¶ 11; Tr. Rearraignment at 14.) Appellate attorneys do not render ineffective assistance by failing to appeal issues that were voluntarily waived by their client. This claim fails for lack of deficiency of counsel. In addition, movant has shown no reasonable probability that he would have succeeded on appeal had his attorney raised the issues.[7]

## D. *Booker*

Movant argues that his attorney failed to object to the district court's use of the sentencing

---

[7] In his reply, movant states that his "main contention is that counsel failed to perfect an appeal" after being requested to do so. (Reply at 12, 14.) He contends that the failure to file an appeal is *per se* ineffective assistance of counsel with or without a showing that the appeal would have any merit. (*Id.* at 16.) Although "a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable . . . a defendant who explicitly tells his attorney not to file an appeal plainly cannot later complain that, by following his instructions, his counsel performed deficiently." *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000). A failure to appeal is not *per se* deficient representation absent specific instructions to file an appeal. *Id.* at 477-78. The appropriate inquiry is "whether counsel's assistance was reasonable considering all the circumstances." *Id.* at 478 (quoting *Strickland*, 466 U.S. at 688). Although movant contends that he initially requested that his attorney file an appeal, he signed a "no appeal" document. (Reply at 4-5.) As discussed, movant has not shown that his attorney coerced him to waive the limited right to appeal that survived his guilty plea.

guidelines as mandatory rather than advisory in light of *United States v. Booker*, 543 U.S. 220 (2005).  (Mot. Vacate at 9B.)  He also claims that his attorney failed to present this issue on direct appeal.  (*See* Mem. Supp. at 33.)

Following *Booker*, the Federal Sentencing Guidelines are no longer mandatory for a court to follow and are instead advisory.  *See* 543 U.S. at 268.  Under the advisory sentencing regime established in Booker, "[t]he sentencing judge is entitled to find by a preponderance of the evidence all the facts relevant to the determination of a Guideline sentencing range and all facts relevant to the determination of a non-Guidelines sentence."  *United States v. Mares*, 402 F.3d 511, 519 (5th Cir.2005); *accord United States v. Jauregui*, 194 Fed. App'x 239, 240 (5th Cir. 2006) (per curium) (following *Mares* and noting that, "[b]y rendering the Guidelines advisory, *Booker* eliminated the Sixth Amendment concerns that prohibited a sentencing judge from finding facts relevant to sentencing").

Contrary to movant's claim, there are no facts in the record that suggest the district court considered the sentencing guidelines to be mandatory.  At rearraignment, the district court repeatedly referred to the sentencing guidelines as advisory and stated that they were not binding.  (*See* Tr. Rearraignment at 10-14, 18.)  At sentencing, the district court also repeatedly referred to the sentencing guidelines as advisory.  (*See* Tr. Sentencing at 3, 28-31, 36-37, 39, 41.)

In the absence of evidence that the Court considered the sentencing guidelines to be mandatory rather than advisory, movant's argument is without merit.  An attorney does not render ineffective assistance when he fails to raise a meritless argument.  *United States v. Kimler*, 167 F.3d 889, 893 (5th Cir. 1999).  Failing to raise a meritless argument has no effect on the outcome of the proceedings.  Consequently, movant has not demonstrated that his trial attorney's conduct was deficient

or that he was prejudiced by any deficiency related to this issue.  In addition, because the claim lacked merit, counsel did not render ineffective assistance by failing to raise it on appeal.

## III.  EVIDENTIARY HEARING

Section 2255 of Title 28 of the United States Code controls whether an evidentiary hearing is required in this case.  The statute provides that no evidentiary hearing is required when "the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief."  *See* 28 U.S.C. § 2255(b).  A defendant bringing a claim under § 2255 that conflicts with his sworn testimony must provide "specific factual allegations" regarding the alleged violation of his constitutional rights, and these allegations must be corroborated before a hearing will be required. *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998).  Furthermore, when the movant's showing is inconsistent with the bulk of his conduct or otherwise fails to meet his burden of proof in light of other evidence in the record, the Court may dispense with his allegations without an evidentiary hearing.  *Id.*  Upon review of the motion to vacate and the files and records of this case, an evidentiary hearing appears unnecessary.  Because movant has provided no independent support for his various claims, he is not entitled to a hearing.  The matters reviewed by the Court conclusively show that movant is entitled to no relief.

## IV.  RECOMMENDATION

For the foregoing reasons, the Court should **DENY** the Motion to Vacate, Set Aside, or Correct Sentence brought pursuant to 28 U.S.C. § 2255 with prejudice.

**SIGNED this 27th day of August, 2009.**

IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## <u>NOTICE OF RIGHT TO APPEAL/OBJECT</u>

A copy of these findings, conclusions and recommendation shall be served on all parties in the manner provided by law.  Any party who objects to any part of these findings, conclusions and recommendation must file specific written objections within 10 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions and recommendation where the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific.  Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).


IRMA CARRILLO RAMIREZ
UNITED STATES MAGISTRATE JUDGE

22